UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
 ANGEL ADRIANYAMBA LATA, *et al.*,

               Plaintiffs,

       -against-

LIVE CONSTRUCTION CORP., *et al.*,

          Defendants.
--------------------------------------------------------X

**REPORT AND RECOMMENDATION**
24 CV 5981 (RER) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 27, 2024, plaintiffs Angel Adrian Yamba Lata and Jairo Danilo Chuquitarco Chicaiza, individually and on behalf of all others similarly situated, commenced this collective action against defendants Live Construction Corp. ("Live") and Anthony Lopez, seeking damages for unpaid wages and unpaid overtime pay, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 216(b), the New York Labor Law ("NYLL") Article 6 and § 652, and 12 N.Y.C.R.R. § 137-1.3, *et seq.*,[1] as well as for violations of the wage statement and recordkeeping requirements of the NYLL, NYLL §§ 195(1), (3). (Compl.[2] ¶¶ 72-96). Following service of the summons and Complaint on the corporate defendant on September 11, 2024, and on defendant Lopez on September 19, 2024,[3] the Clerk of Court entered a default against both of them on January 17, 2025, when neither defendant filed an answer or otherwise responded to the Complaint. (Avshalumov Aff.).

---

[1] Given that 12 N.Y.C.R.R. § 137-1.3 has been repealed, the Court construes the Complaint as instead bringing claims for unpaid overtime pay under 12 N.Y.C.R.R. § 142-2.2.

[2] Citations to "Compl." refer to the plaintiffs' Collective Action Complaint, filed August 27, 2024. (ECF No. 1).

[3] According to the Affirmation of Roman Avshalumov, Esq., in Support of Plaintiffs' Motion for a Default Judgment in a Sum Certain Against All Defendants, filed February 14, 2025 (ECF No. 16 ("Avshalumov Aff.")), the corporate defendant was served via the Office of the Secretary of State on September 11, 2024, pursuant to N.Y. Business Corporations Law § 306, and defendant Lopez was served on September 19, 2024, at his last-known residence at 15 Kenilworth Lane, Warwick, N.Y. 10990, by affixing a copy of the pleadings to the door and mailing a copy the next day, September 20, 2024. (Avshalumov Aff. ¶¶ 6, 7, Exs. B, C).

Currently pending before this Court on referral from the Honorable Ramón E. Reyes, United States District Judge, is plaintiffs' Motion for Default Judgment, filed February 14, 2025. (ECF No. 15).  For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for default judgment be granted and that plaintiff Lata be awarded $77,050.43 in damages and pre-judgment interest in the amount of $5.15 per day from February 14, 2023 until the date of final judgment; that plaintiff Chicaiza be awarded $30,809.29 in damages and pre-judgment interest in the amount of $1.55 per day from March 17, 2023 until the date of final judgment; and that plaintiffs' request for attorneys' fees and costs be awarded in the amount of $13,811.00, along with post-judgment interest.

## FACTUAL BACKGROUND

Defendant Live Construction Corp. is alleged to be a New York domestic business corporation, with its principal place of business located at 15 Kenilworth Lane, Warwick, N.Y. 10990.  (Compl. ¶¶ 10, 11).  Defendant Lopez is alleged to be the owner and operator of Live, responsible for overseeing the daily operations of the company, with the power to hire and fire employees, determine and pay wages, set work schedules and maintain employment records. (Id. ¶¶ 12-19).  It is alleged that Live was an enterprise engaged in interstate commerce within the meaning of the FLSA, in that it purchased goods, tools, and supplies through the stream of interstate commerce, and had employees who were engaged in the production of goods intended for commerce and handled, sold, and worked with goods and material that moved in interstate commerce.  (Id. ¶ 21).  In addition, plaintiffs further allege that Live had an annual gross volume of sales of not less than $500,000.  (Id.)

Plaintiff Lata alleges that he was employed by defendants as a construction worker, carpenter, and concrete worker from approximately November 2022 until in or around May

2023.  (Id. ¶ 23).  Plaintiff claims that during this period, he regularly worked five days per week; three days a week, he worked shifts beginning at 7:00 a.m. and ending at 5:30 p.m. or later, and two days a week, he worked from 7:00 a.m. until 10:00 p.m. or later.  (Id. ¶¶ 24, 25).  According to plaintiff, he was paid approximately $34.00 an hour for the first 40 hours of work, and then paid at the rate of time and a half for 5 hours in excess of the first 40.  (Id. ¶¶ 27, 28).  Thus, even though he worked a total of 61.5 hours per week, he was only compensated for 45 hours and received nothing for the remaining 16.5 hours of overtime each week.  (Id. ¶¶ 26, 29, 30).  Plaintiff Lata further alleges that he was not compensated at all for his last six weeks of employment, in violation of the FLSA and NYLL.  (Id. ¶ 31).

Plaintiff Chicaiza alleges that he was employed by Live as a construction worker, carpentry helper, and concrete worker from January 2023 until approximately May 2023.  (Id. ¶ 39).  Plaintiff Chicaiza claims that he worked five days per week; three days per week, he worked a shift from 7:00 a.m. to 3:30 p.m. or later, and two days per week, he worked shifts beginning at 7:00 a.m. until 10:00 p.m. or later.  (Id. ¶¶ 40, 41).  According to plaintiff, he was paid approximately $27.00 per hour for the first 40 hours of work, and time and a half for approximately six hours of overtime per week, even though he typically worked 55.5 hours per week.  (Id. ¶¶ 42-44).  Thus, he claims he was not compensated at all for 9.5 hours of overtime per week, in violation of the overtime provisions of the FLSA and NYLL.  (Id. ¶¶ 45, 46).  He also alleges that he was not paid at all for his last two weeks of employment.  (Id. ¶ 47).

Both plaintiffs complain that defendants willfully failed to post notices in conspicuous places within the location of employment and never provided plaintiffs with a wage notice at the time of hire or any other time nor did they provide plaintiffs with proper wage statements.  (Id. ¶¶ 34, 35, 56, 57).  The plaintiffs both allege that due to the defendants' failure to provide proper

notices and statements, plaintiffs were unable to identify their employer to remedy the compensation issues, lacked knowledge of the rates of pay they were receiving or should have been receiving, were unable to ascertain their hourly pay rate, and thus were also unable to ascertain whether they were properly paid and paid time and a half for overtime.  (Id. ¶¶ 37, 38, 58, 59).

They assert claims of overtime violations under the FLSA and NYLL, failure to pay any wages at all for a period of time under the FLSA and NYLL, as well as violations of the wage statement and recordkeeping requirements of the NYLL.  (Id. ¶¶ 72-96).[4]

Following plaintiffs' motion for default judgment, filed February 14, 2025, this Court held an inquest hearing on July 8, 2025.  (Minute Entry, dated July 8, 2025).  Defendants failed to appear.  On July 22, 2025, plaintiffs' counsel filed a supplemental letter brief addressing certain questions raised at the hearing (ECF No. 24), which was served on defendants that day via first class mail (ECF No. 25).

Having considered plaintiffs' original motion papers and the supplemental letter dated July 22, 2025, the Court respectfully recommends that plaintiffs' motion for default judgment be granted and that plaintiff Lata receive a total of $77,050.43 in damages and pre-judgment interest in the amount of $5.15 per day from February 14, 2023 until the date of final judgment; that plaintiff Chicaiza receive a total of $30,809.29 in damages and pre-judgment interest in the amount of $1.55 per day from March 17, 2023 until the date of final judgment; and that post-judgment interest be awarded to plaintiffs along with $13,811.00 in attorney's fees and costs.

---

[4] The Court notes that the Complaint pleads claims on behalf of a collective composed of other employees similarly situated under the FLSA.  (Compl. ¶¶ 60-71).  In seeking default judgment, plaintiffs are only asking for damages on behalf of themselves and not on behalf of other employees.  (See ECF No. 17, Memorandum of Law in Support of Plaintiffs' Motion For Entry of A Default Judgment in a Sum Certain Against Live Construction Corp. and Anthony Lopez, as an individual, filed February 14, 2025 ("Pls.' Mem.")).  The Court further notes that, despite the title of plaintiffs' Memorandum, plaintiffs' motion is not, in fact, for a "sum certain."

<u>DISCUSSION</u>

In their letter supplementing the Motion, plaintiffs seek damages totaling $77,050.43 as to plaintiff Lata, representing $25,365.21 in unpaid overtime wages; $8,160 in unpaid wages; $33,525.21 in liquidated damages; and $10,000 based on violations of the WTPA.  (Pls.' Supp. Ltr.[5] at 1-2, Ex. 1).  As to plaintiff Chicaiza, he seeks a total of $30,809.29, representing $8,244,64 in unpaid overtime wages; $2,160 in unpaid wages; $10,404.64 in liquidated damages; and $10,000 based on violations to the WTPA.  (<u>Id.</u>)  Plaintiffs each also seek pre-judgment interest in the amount of $5.15 per day for plaintiff Lata from a midpoint date of February 14, 2025 until the date of judgment, for a total of $4,581.99 as of the date of the Supplemental Letter, July 22, 2025; and $1.55 per day for plaintiff Chicaiza from a midpoint date of March 17, 2025 until the date of judgment, for a total of $1,329.10 as of the date of the Supplemental Letter.[6]  (<u>Id.</u> at 2-3, Ex. 2).  Finally, plaintiffs seek attorney's fees in the amount of $12,760.00 and costs of $1,051.00, as well as post-judgment interest.  (<u>Id.</u> at 4, Ex. 3).  In sum, plaintiffs seek a combined total of $121,670.71 from defendants, plus pre- and post-judgment interest.  (<u>Id.</u> at 4).

I.    <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ.

---

[5] Citations to "Pls.' Supp. Ltr." refer to the plaintiffs' supplemental letter in support of their motion for default judgment, filed July 22, 2025.  (ECF No. 24).

[6] As explained below, the Court believes plaintiffs undercount the pre-judgment interest that they are owed and the corrected amount would be:  for plaintiff Lata, $8.27 per day from February 14, 2023 until the date of final judgment; and for plaintiff Chicaiza, $2.57 per day from March 17, 2023 until the date of final judgment.  However, since plaintiffs only request the lower amount in the motion papers served on defendants, the Court awards them the amount requested.

P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an "extreme sanction," it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, considering the "oft-stated preference for resolving disputes on the merits[,]" default judgments are "generally disfavored[,]" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the claims were adequately pleaded in the

complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); (2) "whether the grounds for default are clearly established," Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023) (quoting Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992)), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023); and (3) the amount of money potentially involved – "the more money involved, the less justification for entering the default judgment," id. Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish his entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, the plaintiff must first establish the defendant's liability as a matter of law, for a defaulting defendant is not considered to have admitted to any legal conclusions. Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y.

Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendant's liability on each cause of action asserted. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating the defendant's liability, the plaintiff must also establish his entitlement to damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989). In the context of a default judgment brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83-84.

In this case, it is beyond dispute that defendants are in default. Although it appears that defendants were properly served with the Summons and Complaint, they failed to file an answer or otherwise respond to the pleadings. Moreover, the failure of the corporate defendant to obtain counsel in this case constitutes a failure to defend because corporate defendants, as corporations, cannot proceed in federal court *pro se*. See Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only); see also Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"). Defendants also failed to respond to plaintiff's

request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's "default is crystal clear – it does not even oppose this motion"), and they did not submit papers in response to plaintiff's motion for default judgment.  Thus, plaintiff's claims and evidence of damages are undisputed.

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay the case any further and finds that default is appropriate here.

II.    Liability

In this case, plaintiff alleges that defendants violated the FLSA and the NYLL by failing to pay overtime wages, failing to pay at all for certain hours worked, and by failing to provide wage statements and notices.[7]  (Compl. ¶¶ 72-96).

A.  FLSA Claims

To establish a claim under the FLSA, a plaintiff must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a)); see also Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985).

1)  Employer Subject to FLSA

As to the first requirement, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or

---

[7] As noted, although plaintiffs allege collective class claims in the Complaint, they only move for default judgment individually, so the Court does not address the class claims.

> otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. § 203(s)(1)(A).

In the Complaint, plaintiffs allege that the defendants are employers within the meaning of the FLSA and NYLL, with the corporate employer having had "employees engaged in interstate commerce, and/or in the production of goods intended for commerce" within the meaning of the FLSA. (Compl. ¶¶ 20, 21). Plaintiffs further allege that at all relevant times, the corporate defendant had gross annual sales of at least $500,000. (Id. ¶ 21). In the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage. See, e.g., Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State"). Thus, taking these allegations as true, the Court finds that plaintiffs have established that the corporate defendant Live Construction qualifies as an employer under the FLSA.

2) <u>Individual Employer Doctrine</u>

This action was brought against the corporate entity Live Construction and the individually named defendant Lopez. As for defendant Lopez, plaintiffs allege that during the relevant period, Lopez was the owner and operator of the corporate defendant, who oversaw the daily operations of the company, and had the power to hire, fire, and control the working conditions and wages of the employees. (Compl. ¶¶ 12-19).

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). An individual may be liable as an employer under the FLSA so long as he exercises "operational control" over the employee in question, see Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff, Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).

Based on the allegations in the Complaint regarding defendant Lopez, plaintiffs have adequately alleged the elements necessary to state a claim against him as an "employer," and thus the corporate defendant and defendant Lopez would be jointly and severally liable for any wage violations.

3) Employees Within FLSA

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098. The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). In determining whether a plaintiff is an "employee" within this definition, the "ultimate question is 'whether as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'" Velu v. Velocity Exp., Inc., 666

11

F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quoting Godoy v. Restaurant Opportunity Ctr. of New York, Inc., 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009)).

Plaintiffs allege in the Complaint that they worked for the defendants in different capacities as construction worker, carpenter or carpentry helper, and concrete worker. (Compl. ¶¶ 23, 39). Plaintiffs also allege that the individual defendant is the owner of the corporate defendant and exercised control over plaintiffs' terms and conditions of employment. (Id. ¶¶ 12, 16-19). Thus, based on the allegations in the Complaint, plaintiffs qualify as "employees," and the corporate and individual defendant qualify as their "employers" under the FLSA. The Court does not find any basis for exempting the employment relationship at issue from coverage under the FLSA.[8] See 29 U.S.C. § 213(a) (setting forth the exemptions under the FLSA).

### 4) Wage Claims - FLSA

Plaintiffs seek damages under the FLSA for failing to pay overtime wages and for failing to pay at all for certain hours worked. (See Pls.' Mem. at 14-20). The Court must consider whether these FLSA claims were adequately pleaded. Plaintiff Lata alleges in the Complaint that from the start of his employment in November 2022 until May 2023, he was paid at the regular rate of $34.00 an hour for all hours up to 40 hours in a week. (Id. ¶¶ 27, 28). For approximately five additional hours over 40, he was paid time and a half, but then not paid anything the remaining 16.5 hours. (Id. ¶¶ 28, 29).

Plaintiff Chicaiza similarly claims that from the start of his employment in January 2023 until May 2023, he was paid $27.00 per hour for all hours up to 40 in a workweek, and then paid

---

[8] The Court notes that the burden of demonstrating that an employee falls within one of these exempted categories rests squarely with the employer. Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (noting that the exemptions are affirmative defenses that an employer must prove). Since defendants have failed to appear in this action, they have not availed themselves of any of the affirmative defenses provided for in the statute.

overtime for approximately 6 hours in excess of 40.  (Id. ¶¶ 43, 44).  Like plaintiff Lata, plaintiff Chicaiza alleges that he was not paid at all for the remaining nine hours of his time each week. (Id. ¶ 45).

Both plaintiffs claim that they are owed overtime wages under the FLSA.  (Id. ¶ 81).  The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  Id.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

In the Complaint, plaintiffs have adequately alleged that during their employment they worked five days a week for differing shifts, at least two of which ran 15 hours a day, for a total of 61.5 hours per week for plaintiff Lata and 55.5 hours per week for plaintiff Chicaiza, which amounts to 21.5 and 15.5 hours of overtime per week, respectively.  (Compl. ¶¶ 25, 26, 41, 42). Plaintiffs allege that, although each was generally paid overtime for a few hours worked over 40 in a week, throughout their employment, they were not paid proper overtime wages for all overtime hours worked, with plaintiff Lata claiming underpayment for 16.5 hours of overtime per week and plaintiff Chicaiza claiming underpayment of 9.5 hours of overtime per week.  (Id. ¶¶ 29, 45).

Lastly, plaintiff Lata alleges that he was not paid at all for his last six weeks of employment, and plaintiff Chicaiza claims not to have been paid for the last two weeks of his employment, which would include unpaid overtime as well.[9]  (Id. ¶¶ 31, 47).  These allegations meet the specificity requirements set forth in Lundy.  Thus, plaintiffs have stated a claim of overtime violations and nonpayment of wages under the FLSA.

Finally, the statute of limitations under the FLSA is two years, or three years where defendants' violations of the FLSA were willful.  29 U.S.C. § 255(a).  Plaintiffs allege that defendants' violations of the FLSA were willful.  (Compl. ¶¶ 33, 36, 38, 49, 52, 54).  Moreover, defendants who default are considered to have committed "willful" violations, and the three-year statute of limitations applies.  See Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  Crediting plaintiffs with a three-year statute of limitations, plaintiffs have adequately pled FLSA claims for the duration of their employment, since their claims accrued when they began working – Lata in November 2022 and Chicaiza in January 2023 – and ended in May 2023.

    5)  NYLL Claims

Plaintiffs also allege that defendants violated provisions of the NYLL related to overtime wages, unpaid wages, and wage notices and wage statements.  (Compl. ¶¶ 79-82, 87-90, 91-93, 94-96).

In order to recover under the NYLL, plaintiffs must prove that they were "employees" and that the defendants were "employers" as defined by the statute.  Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the

---

[9] Although plaintiffs allege unpaid overtime for the period when they were paid nothing at all, their damages calculations seem to only account for regular wages owed for 40 hours.  (See Pls.' Supp. Ltr. at 1, 2)

14

law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  In making these determinations, New York courts focus on the degree of control the alleged employer exercised over the alleged employee, analyzing whether the employee:  "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 34 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 802 N.E.2d 1090, 1093, 770 N.Y.S.2d 692, 695 (2003).  Any parties found to be employers under the NYLL are jointly and severally liable to plaintiff.  See Tacuri v. Nithun Constr. Co., No. 14 CV 2908, 2015 WL 790060, at *4-5 (E.D.N.Y. Feb. 24, 2015); Karic v. Major Automotive Cos., 992 F. Supp. 2d 196, 203 (E.D.N.Y. 2014).

As set forth above, plaintiffs allege that during the relevant period of time, defendant Lopez was the owner of the corporate defendant, and had the power to hire, fire, and control the working conditions and wages of the employees.  (Compl. ¶¶ 12, 15, 17, 18).  In addition, plaintiffs allege that defendants were plaintiffs' employers within the meaning of the NYLL §§ 2 and 651.  (Id. ¶ 20). These allegations are sufficient to state a claim that defendants were employers under the NYLL.

Similarly, under the New York Labor Law, an employee is defined as "any individual employed or permitted to work by an employer in any occupation."  N.Y. Lab. Law § 651(5).  In this case, plaintiffs allege that at all relevant times, they were defendants' employees within the meaning of the NYLL.  (Compl. ¶ 22).  The allegations set forth in plaintiffs' Complaint, as outlined above, clearly establish that plaintiffs were employees of the defendants.

Accordingly, based on these uncontested allegations, the Court finds that plaintiffs have adequately alleged that defendants were their employers and that they were employees under the NYLL.  Moreover, the allegations in the Complaint are sufficient to state a claim that plaintiffs were not properly compensated for all hours worked and were not properly paid overtime at one and a half times their regular hourly rate for certain times in their employment.  Thus, taking plaintiffs' allegations as true, plaintiffs have adequately pleaded violations of the FLSA and NYLL wage and overtime provisions.

6)  <u>Wage Theft Prevention Act Claims</u>

The Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3), requires that employers provide employees with notices regarding their wages at the time of their hiring and wage statements with each payment of wages.  The notice must contain the rate or rates of pay; whether the employee was to be paid by the hour, shift, day, or week; any allowances claimed as part of the minimum wage; the regular pay day; the name of the employer; the physical address of the employer's main office; and the employer's telephone number in both English and the employee's primary language, if different from English.  <u>Id.</u> § 195(1)(a).  The wage statement must include "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;" and certain allowances.  <u>Id.</u> § 195(3).

The Supreme Court explained in <u>TransUnion LLC v. Ramirez</u>, that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  594 U.S. 413, 426 (2021).  The Supreme Court clarified that "[o]nly those plaintiffs

16

who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." Id. at 427 (emphasis in original). Applying TransUnion to WTPA claims, the Second Circuit in Guthrie v. Rainbow Fencing Inc. recently declared that in order to bring a claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." 113 F.4th 300, 308 (2d Cir. 2024). Thus, after Guthrie, alleging only a statutory violation of the WTPA is insufficient. Plaintiffs sufficiently allege an injury-in-fact when they claim, for example, that the failure to notify "prevented the employee from obtaining full payment of wages in a timely fashion." Id. at 309.

Here, plaintiffs allege that defendants willfully failed to post notices of the minimum wage and overtime wage requirements and to provide wage notices at the time of hire to their employees, including plaintiffs, or at any time during their employment. (Compl. ¶¶ 33, 34, 49, 50). Plaintiffs further allege that they were not provided with wage statements that included all hours worked and all wages received each week. (Id. ¶¶ 35, 51). Plaintiffs allege that as a direct result of defendants' failure to provide these notices and wage statements, plaintiffs suffered a concrete harm in that they were unable to identify the employer to remedy the compensation problems, lacked knowledge about the rates of pay they were actually receiving and/or should have been receiving, and were unable to determine their hourly rates of pay to see if they were being properly paid under the FLSA and NYLL – which they were not. (Id. ¶¶ 37, 53).

Accordingly, plaintiffs' Complaint adequately alleges downstream harm, and thus, the Court finds that plaintiffs have sufficiently alleged an injury flowing from defendants' violations of the WTPA.

III.        Damages

   A.  Legal Standard

Having determined that plaintiffs have established that all defendants are liable for damages flowing from FLSA and NYLL violations, the Court now must determine whether plaintiffs have established their damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83.  While a defendant's failure to pay overtime wages violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted." Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014).  Courts will thus award damages under whichever statute would allow for greater recovery.  Id.

Once the Court determines that default judgment should enter, plaintiffs must still establish their entitlement to the damages sought. See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  Unlike with the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages.  See Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *3 (E.D.N.Y. Aug. 9, 2023).  Thus, plaintiffs must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, the court is permitted to "conduct hearings" or make referrals as necessary. Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *3 (E.D.N.Y. Feb. 13, 2018) (quoting Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989)), report and recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018).

In this case, defendants have not answered the Complaint or appeared before the Court. Since defendants are in default, plaintiffs' evidence on damages is undisputed. As an initial matter, plaintiffs' Declarations and submissions as to the hours worked and rate of pay received are sufficient bases for this Court to recommend an award of damages, even in the absence of further documentation.

B. Overtime and Unpaid Wages

Plaintiffs allege in the Complaint that defendants failed to pay them proper overtime wages in violation of both the FLSA and NYLL. (Compl. ¶¶ 72-82). Plaintiffs also allege that there was a certain period of time when defendants failed to pay them any wages at all. (Id. ¶¶ 83-90).

The NYLL and the FLSA are analytically nearly identical with respect to overtime claims. D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013). Like the FLSA, the NYLL requires that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40

19

hours in a week.  <u>See</u> N.Y. Lab. Law § 160; 12 N.Y.C.R.R. § 142-2.2; <u>see also</u> <u>Noble v. 93 Univ. Place Corp.</u>, 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).

To the extent plaintiffs claim that defendants failed to pay them one and one-half their regular rate of pay for all hours worked over 40 in a week, and failed to pay them anything at all for the last few weeks of their employment, the Court finds that plaintiffs have adequately alleged NYLL violations for the same reasons as discussed above regarding those claims under the FLSA.  The Court similarly finds that plaintiff has adequately alleged claims under New York's Wage Theft Prevention Act for the reasons discussed above.

Under the FLSA, a plaintiff-employee generally "has the burden of proving that he performed work for which he was not properly compensated."  <u>Santillan v. Henao</u>, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946), <u>superseded on other grounds by</u>, 29 U.S.C. § 251, <i>et seq</i>.).  The Supreme Court in <u>Anderson v. Mt. Clemens Pottery Co.</u> noted, however, that "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  328 U.S. at 687.  By defaulting, defendant has "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages."  <u>Santillan v. Henao</u>, 822 F. Supp. 2d at 294.  In default cases, the Supreme Court has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  <u>Tran v. Alphonse Hotel Corp.</u>, 281 F.3d 23, 31 (2d Cir. 2002) (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. at 687), <u>overruled on other grounds by</u>, <u>Slayton v. American Express Co.</u>, 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record-keeping).

New York law also requires that employers keep various detailed employment records. Like the FLSA, the NYLL requires that employers keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information. See N.Y. Lab. Law § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other"); id. § 195(2) (requiring employers to notify employees in writing of any changes at least 7 calendar days prior to the time of such changes); id. § 195(3) (requiring employers to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work[;] . . . gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages"); id. § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than six years . . . payroll records showing for each week worked the hours worked; . . . gross wages; deductions; .

. . and net wages for each employee"). Thus, where the defendant has failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the defendant. See Marin v. JMP Restoration Corp., No. 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012) (explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendant's default, plaintiffs' "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002). Courts have applied this same presumption of correctness to a plaintiff's recollection of wages earned. See, e.g., Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012).

Here, because defendants are alleged to have failed to meet their obligation to provide plaintiffs with proper wage records, the only evidence offered to support plaintiffs' claim that they were paid less than they were entitled to under the law is based on plaintiffs' statements. Given that the defendants have not appeared in this action to challenge plaintiffs' claims, the Court presumptively finds plaintiffs' evidence as to hours worked and wages paid credible, and bases its analysis and recommendation on plaintiffs' recollection.

1) Plaintiffs' Damages Calculations for Unpaid Wages and Overtime

a) Plaintiff Lata

Plaintiff Lata seeks unpaid overtime wages for approximately 30.14 weeks during the period from November 1, 2022 to May 31, 2023. (Pls.' Supp. Ltr., Ex. 1). Plaintiff claims that he worked a total of 61.5 hours per week, and was paid at a regular rate of $34 per hour for the first 40 hours. (Id.) Of the remaining 21.5 hours of overtime, plaintiff claims that he was paid

22

time and a half for only five of those hours and paid nothing for the remaining 16.5 hours of overtime.  (Id.)  Thus, he seeks damages calculated at the rate of $51.00 per hour, representing time and half of his regular rate of $34 per hour, multiplied by the 16.5 hours of overtime owed, for a total of $25,365.21.  (Id.)

Having reviewed plaintiffs' submissions and calculations, the Court respectfully recommends that plaintiff Lata be awarded $25,365.21 in unpaid overtime wages.

Plaintiff Lata also seeks damages for unpaid wages for the last six weeks of his employment during which time he received no wages at all.  In the updated damages chart provided by plaintiffs, Lata calculates the amount owed for unpaid wages as $8,160.00.  (Id.)  In the note to the calculations, the chart states that the $8,160.00 was calculated by multiplying the regular hourly rate ($34), times 40 hours, times 6 weeks.  (Id.)  Aside from the unpaid overtime wages calculated above, it appears that plaintiff is not seeking any overtime wages for the six-week period when he received no pay at all, although nothing in the papers submitted in connection with the inquest explicitly states this nor is there any explanation as to why plaintiff did not work overtime during this last six-week period.  However, since plaintiff is not requesting more than he is entitled to based on the allegations in the Complaint, the Court respectfully recommends that plaintiff Lata receive an amount of $8,160 for the last six weeks of employment when he was not paid at all.

Accordingly, it is respectfully recommended that plaintiff Lata be awarded a total of $33,525.21 in unpaid wages and unpaid overtime.

In addition, the Court finds that plaintiff Lata has alleged facts sufficient to assert standing under the WTPA, and is entitled to receive an award of $10,000 in statutory damages, representing $5,000 owed for failure to provide a proper wage notice pursuant to NYLL § 195(1)

23

and an additional $5,000 for defendants' failure to provide proper wage statements as required by NYLL § 195(3).

b)  <u>Plaintiff Chicaiza</u>

Plaintiff Chicaiza seeks unpaid overtime wages for 21.43 weeks during the period from January 1, 2023 to May 31, 2023.  (Pls.' Supp. Ltr., Ex. 1).  Plaintiff claims that he worked a total of 55.5 hours per week, and was paid at a regular rate of $27 per hour for the first 40 hours.  (<u>Id.</u>) Of the remaining 15.5 hours of overtime, plaintiff claims that he was paid time and a half for only six of those hours and paid nothing for the remaining 9.5 hours of overtime.  (<u>Id.</u>)  Thus, he seeks damages calculated at the rate of $40.50 per hour, representing time and half of his regular rate of $27 per hour, multiplied by the 9.5 hours of overtime owed, for a total of $8,244.64.  (<u>Id.</u>)

Having reviewed plaintiffs' submissions and calculations, the Court respectfully recommends that plaintiff Chicaiza be awarded $8,244.64 in unpaid overtime wages.

Plaintiff Chicaiza also seeks damages for unpaid wages for the last two weeks of his employment during which time he received no wages at all.  In the updated damages chart provided by plaintiffs, Chicaiza calculates the amount owed for unpaid wages as $2,160.00.  (<u>Id.</u>) In the note to the calculations, the chart explains that the $2,160.00 was calculated by multiplying his regular hourly rate ($27), times 40 hours, times 2 weeks.  (<u>Id.</u>)  As with plaintiff Lata, it appears from this calculation that plaintiff is not seeking any overtime wages for this final two-week period, although nothing in the inquest papers states this explicitly.  However, since plaintiff is not requesting more than he is entitled to based on the allegations in the Complaint, the Court respectfully recommends that plaintiff Chicaiza receive an amount of $2,160 for the last two weeks of employment when he was not paid at all.

Accordingly, it is respectfully recommended that plaintiff Chicaiza be awarded a total of $10,404.64 in unpaid wages and unpaid overtime.

24

In addition, the Court finds that plaintiff Chicaiza has alleged facts sufficient to assert standing under the WTPA, and is entitled to receive an award of $10,000 in statutory damages, representing $5,000 owed for failure to provide a proper wage notice pursuant to NYLL § 195(1) and an additional $5,000 for defendants' failure to provide proper wage statements as required by NYLL § 195(3).

 C. <u>Liquidated Damages</u>

Plaintiffs request an award of liquidated damages for defendants' wage violations under the FLSA and NYLL.  (Compl. ¶¶ 2, 78, 82, 86, 90; Pls.' Mem. at 20-22).  The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a) and 663(1). Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL only if the underpayment was found to be willful.  N.Y. Lab. Law § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer.  <u>Hengjin Sun v. China 1221, Inc.</u>, No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting <u>Galeana v. Lemongrass on Broadway Corp.</u>, 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both the FLSA and NYLL, the employer bears the burden of proving good faith and reasonableness. Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith."  <u>Inclan v. New York Hosp. Grp., Inc.</u>, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing <u>He v. Home on 8th Corp.</u>, No. 09 CV 5630, 2014 WL 3974670, at *7 n.19 (S.D.N.Y. Aug. 13, 2014)); <u>Eschmann v. White Plains Crane Serv., Inc.</u>, No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014). Accordingly, the employer's burden of proving good faith "is a difficult one, with double

damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F.

Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142

(2d Cir. 1999)) (awarding 100% liquidated damages under the FLSA standard).  Although

defendant may be liable under both statutes, plaintiffs may only recover once for liquidated

damages.  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Further, liquidated damages are only available on wage claims found under the applicable

statute.  See Douglas v. Spartan Demolition Co. LLC, No. 15 CV 5126, 2018 WL 4521212, at *6

(S.D.N.Y. Sept. 21, 2018).[10]  Thus, plaintiffs are entitled to recover liquidated damages for their

unpaid regular wage and overtime claims.  Id.  Here, since the Court recommends an award of

overtime damages and unpaid wages under the NYLL, plaintiffs are entitled to 100% of the

damages owed for unpaid overtime and wages under the NYLL as liquidated damages.  See

NYLL §§ 198(1-a), 663(1).

Thus, the Court respectfully recommends that plaintiff Lata be awarded $33,525.21 and

plaintiff Chicaiza be awarded $10,404.64 in liquidated damages under the NYLL, representing

100% of the wages owed.

D.  Pre-Judgment Interest

Plaintiffs also assert that they are entitled to pre-judgment interest calculated at the rate of

9% annually under the NYLL.  (Pls.' Supp. Ltr. at 2-3 (citing N.Y. C.P.L.R. § 5004)).  Plaintiff

Lata requests $4,581.99 in pre-judgment interest as of the date of the plaintiffs' supplemental

papers, filed July 22, 2025, and plaintiff Chicaiza requests $1,329.10 in pre-judgment interest for

the same period. (Id., Ex. 2 at 2).

---

[10] Liquidated damages are not available for damages under the WTPA.  Ge Chun Wen v. Hair Party 24
Hours Inc., No. 15 CV 10186, 2021 WL 3375615, at *11 (S.D.N.Y. May 17, 2021), report and recommendation
adopted sub nom. Wen v. Hair Party 24 Hours Inc., 2021 WL 2767152 (S.D.N.Y. July 2, 2021).

Pre-judgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of prejudgment interest." Yuquilema v. Manhattan's Hero Corp., No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), report and recommendation adopted, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008).  However, the Second Circuit has held that, as liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).  Pre-judgment interest is available only on a plaintiff's actual damages under the NYLL, and not on liquidated damages.  See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).  Pre-judgment interest is also not available for amounts awarded as statutory damages under the WTPA.  Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

Pre-judgment interest under New York Law is governed by Section 5001 of the New York Civil Practice Law and Rules, which states:  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id.  Where, as here, violations of the NYLL occur over an extended period of time, courts calculate pre-judgment interest from a "single reasonable intermediate date."  Id.;

27

see, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011) (holding that, "[t]he plaintiffs have calculated prejudgment interest from the midway point of each plaintiff's employment, which is a reasonable approach").

In determining pre-judgment interest, "[c]ourts have discretion in choosing a reasonable date from which to calculate" it. Ladino v. Cordova, No. 21 CV 2449, 2024 WL 968898, at *4 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024). In this district, courts most often select a "median date between the earliest ascertainable date the cause of action existed and the date the action was filed" from which to calculate pre-judgment interest. Id. (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 93). However, courts have also held as reasonable a midpoint based upon the period of employment subject to the NYLL claim. See, e.g., Thompson v. Hyun Suk Park, 18 CV 6, 2020 WL 5822455, at *11 (E.D.N.Y. Sep. 1, 2020) (calculating the midpoint between plaintiff's start and end dates, which represented "the period in which the NYLL claim accrued"); Rosas v. M and M LA Solucion Flat Fixed Inc., No. 23 CV 1212, 2024 WL 4131905, at *17 (E.D.N.Y. Sep. 10, 2024) (calculating midpoint between date NYLL claims first accrued and end date of employment).

Here, plaintiffs request pre-judgment interest for plaintiffs' NYLL wage claims, indicating that the midpoint of plaintiff Lata's employment was February 14, 2023, and that the midpoint of plaintiff Chicaiza's employment was March 17, 2023. (Pls.' Supp. Ltr. at 3). The Court concludes that these midpoints are reasonable based on plaintiffs' filings and considering that case law supports calculating the midpoint based on the start and end dates of employment. See Wicaksono v. XYV 48 Corp., 2011 WL 2022644, at *9.

Plaintiffs calculated the pre-judgment interest for each plaintiff by, first, determining each plaintiff's damages on their overtime owed as of the midpoint date, plus their unpaid wages. (Pls.' Supp. Ltr. at 3).  Next, they determined the annual accrual by multiplying each plaintiff's midpoint damages by a rate of nine percent annually, then dividing it by 365 days to determine the daily interest rate.  (Id.)  Finally, they multiplied the daily interest with the number of days between each plaintiff's midpoint date and the date of filing, noting that additional daily interest should be applied for each day until the date of judgment.  (Id.)[11]

As of plaintiff Lata's midpoint date of February 14, 2023, he was owed overtime of $12,742.71, which, added to his total unpaid wages of $8,160.00, equals midpoint damages in the amount of $20,902.71.  (Pls.' Supp. Ltr., Ex. 2 at 1-2).  Multiplying the midpoint damages by an annual interest rate of nine percent yields approximately $1,881.24 per year in interest, or $5.15 per day based on 365 days per calendar year.  (Id.)  As of the date of this Report and Recommendation, plaintiff Lata would therefore be entitled to $4,877.05 in pre-judgment interest based on 947 days between February 14, 2023 and the date of this Report and Recommendation, September 18, 2025.

As of plaintiff Chicaiza's midpoint date of March 17, 2023, he was owed overtime of $4,122.32, which, added to his total unpaid wages of $2,160.00, equals midpoint damages in the amount of $6,282.32.  (Id., Ex. 2 at 1, 3).  Multiplying the midpoint damages by an annual interest rate of nine percent yields approximately $565.41 per year in interest, or $1.55 per day

---

[11] As mentioned above, the Court determines that this approach undercounts plaintiffs' pre-judgment interest.  Instead, plaintiffs should have multiplied each plaintiff's *total* damages for unpaid and overtime wages by a rate of nine percent annually, then divides that by 365 days for the daily interest rate, which can then be multiplied by the number of days between the midpoint date and the date of judgment.  See N.Y. C.P.L.R. § 5001(b) (stating that "[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon *all of the damages* from a single reasonable intermediate date" (emphasis added)); see, e.g., Collado v. JS Food & Grocery Corp., No. 23 CV 6617, 2025 WL 959096, at *12 (E.D.N.Y. Feb. 2, 2025), report and recommendation adopted, Electronic Order, dated Mar. 31, 2025.  Nevertheless, because plaintiffs only request the lower amount in the motion papers served on defendants, the Court awards them the amount requested.

based on 365 days per calendar year.  (Id.)  As of today, plaintiff Chicaiza would therefore be entitled to $1,419.80 in pre-judgment interest based on 916 days between March 17, 2023 and the date of this Report and Recommendation, September 18, 2025.

In total, it is respectfully recommended that plaintiff Lata be awarded a total of $77,050.43, representing $8,160.00 in unpaid wages, $25,365.21 in unpaid overtime wages under the NYLL, $33,525.21 in liquidated damages, and $10,000 in statutory damages; plus $5.15 per day in pre-judgment interest, starting on February 14, 2023, until final judgment is entered.  As for plaintiff Chicaiza, it is respectfully recommended that he be awarded a total of $30,809.29, representing $2,160.00 in unpaid wages, $8,244.64 in unpaid overtime wages under the NYLL, $10,404.64 in liquidated damages, and $10,000 in statutory damages; plus $1.55 per day in pre-judgment interest, starting on March 17, 2023, until final judgment is entered.

IV.    Attorney's Fees

Plaintiffs also seek to recover an award of attorney's fees in the amount of $12,760.00, representing 18.8 hours of work by senior managing attorney Roman Avshalumov at a rate of $500 per hour, 5.4 hours of work by head of the labor practice group and managing attorney James O'Donnell at a rate of $400 per hour, and 12 hours of bilingual paralegal services provided at $100 per hour; plus $1,051.00 in costs.  (See id. at 4, Ex. 3.)  Pursuant to the applicable provisions of the FLSA and the NYLL, 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), plaintiffs are entitled to an award of reasonable attorney's fees and costs.

A.    Prevailing Party

The FLSA is a fee shifting statute, and the Court "must" award a reasonable attorney's fee to a prevailing party in an FLSA action.  Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an

FLSA action "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" (emphasis added))); see also Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144, at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. Law § 663(1).  Section 663 provides that successful employees are entitled to "recover in a civil action the amount of any such underpayments, together with costs[,] all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . . ."  Id.

Plaintiffs are prevailing parties under the FLSA and the NYLL "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990) (holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendants have defaulted, plaintiffs are prevailing parties and therefore should receive an award of reasonable attorney's fees and costs.

B.  Calculation of Reasonable Attorney's Fees

1)  Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350,

at *5 (S.D.N.Y. Mar. 1, 2012) (citing <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 551-52 (2010)), <u>report and recommendation adopted</u>, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); <u>see also</u> <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point"); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine the "number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." <u>Moore v. Diversified Collection Servs., Inc.</u>, No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 433), <u>report and recommendation adopted</u>, 2013 WL 1622713 (Apr. 15, 2013); <u>see also</u> <u>Adusumelli v. Steiner</u>, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate" (citing <u>Millea v. Metro-North R.R., Co.</u>, 658 F.3d at 166)); <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 166-67 (quoting <u>Perdue v. Kenny A.</u>, 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" <u>Id.</u> (quoting <u>Perdue v. Kenny A.</u>, 559 U.S. at 553); <u>see also</u> <u>Adusumelli v. Steiner</u>, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." <u>Millea v. Metro-North R.R. Co.</u>, 658

F.3d at 167.  As the court explained in <u>Dunn v. Advanced Credit Recovery, Inc.</u>, a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [<u>Johnson v. Georgia Highway Express, Inc.</u>] factors to reflect consideration of any special circumstances."  2012 WL 676350, at *5 n.6.

       2)  <u>Analysis</u>

In this case, plaintiffs were represented by Roman Avshalumov, a senior managing attorney at Helen F. Dalton & Associates, P.C. (the "Firm").  (Pls.' Supp. Ltr., Ex. 3 at 2).  Mr. Avshalumov has been an attorney for 15 years, admitted to practice in New York and New Jersey, along with the E.D.N.Y., S.D.N.Y., and the District of New Jersey, representing both defendants and plaintiffs in numerous labor/employment actions.  (<u>Id.</u>)  He bills at the rate of $500 per hour and spent approximately 18.8 hours on this case, for a total fee of $9,400.  (<u>Id.</u>)

Plaintiffs were also represented by James O'Donnell, head of the labor law practice group and managing attorney at the Firm.  (<u>Id.</u>)  He has been an attorney for ten years, admitted to the New York Bar, as well as the E.D.N.Y. and S.D.N.Y.  (<u>Id.</u>)  He bills at the rate of $400 per hour and spent approximately 5.4 hours on this matter, for a total fee of $2,160.  (<u>Id.</u>)

Finally, bilingual paralegals provided 12 hours of service in connection with this matter, billing at the rate of $100 per hour, for a total of $1,200.  (<u>Id.</u>)  In total, plaintiffs request $12,760 in attorneys' fees.  (<u>Id.</u>)

In accordance with <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney, law clerk, or paralegal, and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (<u>See</u> Pls.' Supp. Ltr., Ex. 3).

a)   Hourly Rates

In order to calculate the lodestar, the Court must first determine a reasonable hourly rate for the legal services performed.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . ."  Id. at 186 (quoting Hensley v. Eckerhart, 461 U.S. at 433).  Additionally, the Second Circuit has adopted the following factors, *inter alia*, to guide the inquiry as to what constitutes a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by, Blanchard v. Bergeron, 489 U.S. 87 (1989)).  A number of recent cases have considered these factors when awarding attorneys' fees.  See Lisnitzer v. Shah, No. 11 CV 4641, 2022 WL 3931388, at *2 (E.D.N.Y. July 6, 2022), report and recommendation adopted sub nom. Lisnitzer v. Zucker, 2022 WL 3914964 (E.D.N.Y. Aug. 31, 2022), amended by, 2023 WL 2020963 (E.D.N.Y. Feb. 15, 2023) (adjusting award by 62 cents); see also Smith v. City of New York, No. 19 CV 6198, 2022 WL 939711, at *4 n.3 (E.D.N.Y. Mar. 28, 2022).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.  In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself.  See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'" (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994))).  The Court may also "look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York in order to determine whether the fees requested are reasonable."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 52.  Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by

35

lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Counsel cites the recent decision of the Honorable Frederic Block, finding that the prevailing rate for partners is $450 to $650 per hour; for senior associates, it is $300 to $450 per hour; $150 to $300 for junior associates; and $100 to $150 per hour for paralegals. Rubin v. HSBC Bank USA, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025). Adopting the Rubin court's stated rates, Mr. Avshalumov's and Mr. O'Donnell's requested hourly rates are reasonable, as is the $100 rate requested for the paralegal work. See, e.g., Harbus v. Vosa TV Inc., No. 24 CV 3572, 2025 WL 1153818, at *3 (E.D.N.Y. Apr. 21, 2025) (relying on Rubin to increase the hourly rate of a senior partner to $650 in a default judgment action); see also Moore v. Rubin, 766 F. Supp. 3d 423 (E.D.N.Y. 2025) (relying on the Johnson factors to set partners' hourly rates at $1000 and senior attorney's hourly rate at $500, even though the rates exceed those found reasonable in Rubin).

Thus, the Court respectfully recommends that counsel be awarded fees calculated at the hourly rate of $500 for Mr. Avshalumov, $400 for Mr. O'Donnell, and $100 per hour for paralegal services, consistent with rates generally awarded in this district.

b) Hours Billed

Turning to the number of hours billed, Mr. Avshalumov represents that he spent a total of 18.8 hours on this matter, Mr. O'Donnell spent 5.4 hours, and the paralegal time amounted to 12 hours of time. (Pls.' Supp. Ltr., Ex. 3).

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of

Albany, 42 F.3d 131, 134 (2d Cir. 1994)), report and recommendation adopted, (S.D.N.Y. Aug. 9, 2012). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)). In this Circuit, judges are required to "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. Nov. 30, 2007) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries. See, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of

work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (2d Cir. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), aff'd in part, vacated in part, and remanded on other grounds sub nom. Cabrera v. Jakabovitz, 24 F.3d 372; Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

For a simple default, generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (*i.e.*, a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater).

Here, given that the attorneys spent only 24.2 hours on the matter, and the paralegals spent 12 hours, the Court finds the number of hours to be reasonable. Having found the number of hours spent on the matter to be reasonable, the Court respectfully recommends that plaintiffs' counsel receive $12,760.00 in attorney's fees, based on 18.8 hours for Mr. Avshalumov multiplied by $500 per hour, plus 5.4 hours for Mr. O'Donnell at $400 per hour, plus 12 hours for the bilingual paralegals at $100 per hour.

### c) Reasonable Costs

Plaintiffs also request $1,051.00 in costs and disbursements, including $405 for filing fees, and $581 spent on service of process fees. (Pls.' Supp. Ltr., Ex. 3). The remaining amount consists of a $65 charge for a military status request for Anthony Lopez. (Id.)

Based on a review of the record, the Court takes judicial notice of the filing fee and recommends that plaintiff be awarded $405 for the filing fee. See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage); see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate")).  With respect to the remaining costs, plaintiffs have provided invoices evidencing the expenditure of these sums.  (Pls.' Supp. Ltr., Ex. 3 at 4-5).

Accordingly, the Court respectfully recommends that plaintiff be awarded $12,760 in attorney's fees, plus an additional $1,051 in costs, totaling $13,811.00.

V.    Automatic Penalty for Failure to Pay

The NYLL provides that, "[a]ny judgment or court order awarding remedies under this section [sections 198 and 663, as does the judgment applied for herein] shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  N.Y. Lab. Law §§ 198(4), 663(4).  It further provides that costs and attorney's fees incurred in enforcement of a judgment shall be awarded to the plaintiff.  Id.  The Court respectfully recommends that the district court include such language in its final judgment, should it adopt this Report and Recommendation.

39

<u>CONCLUSION</u>

The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiff Lata be awarded the following damages:  (1) $33,525.21 for unpaid overtime and unpaid wages under the NYLL; (2) $33,525.21 in liquidated damages; (3) $10,000.00 in statutory damages; (4) $5.15 per day in pre-judgment interest, starting on February 14, 2023, until final judgment is entered; (5) post-judgment interest until the judgment is paid in full; that plaintiff Chicaiza be awarded the following damages:  (1) $10,404.64 for unpaid overtime and unpaid wages under the NYLL; (2) $10,404.64 in liquidated damages; (3) $10,000.00 in statutory damages; (4) $1.55 per day in pre-judgment interest, starting on March 17, 2023, until final judgment is entered; (5) post-judgment interest until the judgment is paid in full; and that plaintiffs receive a total of $13,811.00 in attorney's fees and costs.  The Court further respectfully recommends that the defendants be held jointly and severally liable for the judgment.  Finally, the Court respectfully recommends that, should the district court adopt this Report and Recommendation, the district court provide in its judgment that "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent," and that plaintiff "shall have the right to collect attorney's fees and costs incurred in enforcing" the judgment.  N.Y. Lab. Law §§ 198(4), 663(4).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court by September 30, 2025.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See, e.g.</u>, <u>Caidor v.</u>

<u>Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendants and file proof of such service on the record within one week of the date of this Report.

**SO ORDERED.**

Dated: Brooklyn, New York
September 18, 2025

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

41